UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR MEDICAL PROGRESS,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | Civil Action No. 21-642 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

This is the second go-round in summary judgment briefing in this lawsuit, as plaintiff Center for Medical Progress, a nonprofit investigative journalism organization, continues its effort to obtain, through a record request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, a grant application submitted by the University of Pittsburgh to serve as a GenitoUrinary Development Molecular Anatomy Project ("GUDMAP") Tissue Hub and Tissue Gathering site for the National Institutes of Health's ("NIH") subcomponent, the National Institute of Diabetes and Digestive and Kidney Diseases ("NIDDK"). *See* Compl. ¶ 5, ECF No. 1; *see also Ctr. for Med. Progress v. U.S. Dep't of Health & Hum. Servs.* ("*Ctr. for Medical Progress I*"), No. 21-cv-642 (BAH), 2022 WL 4016617 (D.D.C. Sept. 3, 2022) (granting, in part, and denying, in part, parties' cross-motions for summary judgment). Still contested is the withholding by defendant U.S. Department of Health and Human Services, under FOIA Exemption 6, 5 U.S.C. § 552(b)(6), of the names of two NIH employees involved with the grant, which plaintiff alleges provides controversial funding for the collection and distribution of fetal stem cell tissue, *see* Decl. of Meredith Di Liberto, Pl.'s Counsel, ¶¶ 14–15, Exs. 9–10, ECF Nos. 18-1, 18-10, 18-11. The parties have thus renewed their cross-motions for summary judgment,

1

with supplemental evidentiary support for their respective positions. *See* Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem."), ECF No. 35; Def.'s Opp'n Supp. Opp'n Pl.'s Mot. Summ. J. & Cross-Mot. Summ. J. ("Def.'s Opp'n"), ECF No. 44. For the reasons explained below, plaintiff's pending motion for summary judgment is denied and defendant's pending cross-motion for summary judgment is granted.

I.  **BACKGROUND**

The factual background and procedural history relevant to the pending motions have been described at length in this Court's prior Memorandum Opinion resolving the parties' initial cross-motions for summary judgment, *see Ctr. for Med. Progress I*, 2022 WL 4016617, at *1–3, and thus are incorporated by reference here. Briefly, this dispute began with plaintiff's FOIA request, submitted on April 28, 2020, requesting access to the grant application of the University of Pittsburgh submitted to NIH to serve as the GUDMAP Tissue Hub and Tissue Gathering site. *See id.* at *1. As production was ongoing, the parties cross-moved for summary judgment regarding whether defendant's reliance on FOIA Exemptions 4 and 6 were properly invoked. *See id.* at *2–3.

Summary judgment was subsequently granted to defendant as to its withholding of six categories of records under Exemption 4 and six categories of records under Exemption 6, *see id.* at *12, but summary judgment was denied to both parties, without prejudice, as to two aspects of the withheld records: (1) various categories of information withheld under Exemption 4 "due to insufficient information to determine whether the parties dispute that such categories contain confidential commercial information"; and (2) "the category of withheld information under Exemption 6 detailed as 'names of NIH staff involved in administering the grant' . . . due to insufficient information to determine whether the asserted privacy interests outweigh the public

interest in this information[,]" *id.* at *18.  The parties were then directed to meet and confer regarding the records remaining at issue and propose further proceedings to resolve any lingering disputes as to the remaining records.  *See id.*  Upon conferral, the parties proposed a schedule for subsequent dispositive motions to resolve the remaining disputes, which request was granted.  *See* Min. Order (Sept. 17, 2022).  Approximately two weeks later, plaintiff moved to alter or amend the September 3, 2022 judgment, *see* Pl.'s Mot. Alter Amend J., ECF No. 30, challenging factual assertions about employee harassment and abortion numbers included in defendant's Third Declaration of Gorka Garcia-Malene ("Third NIH Decl."), ECF No. 23-2, referenced in the Memorandum Opinion.  *See Ctr. for Med. Progress I*, 2022 WL 4016617, at *9, *13.  That motion was denied for the reasons explained in *Center for Medical Progress v. U.S. Department of Health & Human Services*, No. 21-cv-642 (BAH), 2022 WL 17976633 (D.D.C. Nov. 16, 2022) ("*Ctr. for Med. Progress II*").

Plaintiff then moved for summary judgment on November 14, 2022, seeking to force the release of the remaining responsive records falling into three categories of information withheld under FOIA Exemption 4 as well as the release of three remaining redacted names of NIH employees withheld under FOIA Exemption 6.  *See* Pl.'s Mem.  Defendant cross-moved for summary judgment, reasserting the validity of its Exemption 4 and 6 withholdings.  *See* Def.'s Opp'n.[1]  As this briefing progressed, defendant chose to release two categories of previously withheld information under Exemption 4, *see* Def.'s Opp'n at 21; Pl.'s Mem. Opp'n Def.'s Cross-Mot. Summ. J. & Reply Supp. Pl.'s Mot. Summ. J. ("Pl.'s Opp'n") at 9 n.13, ECF No. 47,

---

[1] Defendant filed its cross-motion and opposition twice on the docket, the only difference being that the latter-filed version includes a Proposed Order and defendant's Response to Plaintiff's Statement of Undisputed Material Facts.  *Compare* ECF No. 43 (including solely defendant's 21-page Memorandum of Law in Support of Defendant's Combined (1) Opposition to Plaintiff's Motion for Summary Judgment and (2) Cross-Motion for Summary Judgment), *with* ECF No. 44 (including the identical 21-page Memorandum of Law as well as the two-page Proposed Order and the two-page Response to Plaintiff's Statement of Undisputed Material Facts).  As such, the more complete filing, ECF No. 44, is considered the operative filing for the purposes of this opinion.

as well as "lifted challenged redactions" also withheld under Exemption 4, rendering moot plaintiff's challenges under this exemption, *see* Def.'s Reply Supp. Def.'s Cross-Mot. Summ. J. ("Def.'s Reply") at 2; *accord id.* at 14–15; *see also* Sixth Decl. of Gorka Garcia-Malene, FOIA Officer, NIH, HHS ("Sixth NIH Decl.") ¶ 4, ECF No. 55-2; *id.*, Ex. 1 (disclosing requested redactions), ECF No. 55-3. Meanwhile, plaintiff withdrew another challenge because defendant's "explanation" of a certain term in the FOIA request revealed that release of one category of materials protected by FOIA Exemption 6 "will not add anything pertinent to the public interest aspect of the records." Pl.'s Opp'n at 4 n.3.

In summary, what remains is plaintiff's challenge to the Exemption 6 withholdings of two categories of information: (1) the name of the "NIH Program Official"; and (2) the name of the "NIH Grants Management Specialist." The parties' motions are now ripe for review.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see also* FED. R. CIV. P. 56(a). In FOIA cases, "courts must grant summary judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure with 'reasonably specific detail'; and (2) is not substantially called into question by contrary record evidence or evidence of agency bad faith." *Schaerr v. U.S. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). Most FOIA cases "can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"The fundamental principle animating FOIA is public access to government documents." *Waterman v. IRS*, 61 F.4th 152, 156 (D.C. Cir. 2023) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)); *accord DiBacco v. U.S. Army* ("*DiBacco I*"), 795 F.3d 178, 183 (D.C. Cir. 2015). Agencies are therefore statutorily mandated to "make . . . records promptly available to any person" who submits a request that "reasonably describes such records" and "is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A). "Congress, however, did not 'pursue transparency at all costs[;]' [r]ather, it recognized that 'legitimate governmental and private interests could be harmed by release of certain types of information.'" *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.* ("*CREW II*"), 45 F.4th 963, 967 (D.C. Cir. 2022) (first quoting *Hall & Assocs. v. EPA*, 956 F.3d 621, 624 (D.C. Cir. 2020), then quoting *AquAlliance v. U.S. Bureau of Reclamation*, 856 F.3d 101, 102 (D.C. Cir. 2017)). To balance those competing interests, "FOIA exempts nine categories of documents from 'the government's otherwise broad duty of disclosure.'" *Waterman*, 61 F.4th at 156 (quoting *AquAlliance*, 856 F.3d at 103). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).

FOIA authorizes federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). When an agency invokes an exemption to disclosure, district courts must "determine *de novo* whether non-disclosure was permissible." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015); *see also U.S. Dep't of Just. v. Landano*, 508 U.S. 165, 171 (1993) ("The Government bears the burden of establishing that the exemption applies."); *DiBacco v. U.S. Dep't of Army* ("*DiBacco II*"), 926 F.3d 827, 834 (D.C. Cir. 2019)

("'An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions,' typically through affidavit or declaration." (quoting *DiBacco I*, 795 F.3d at 195)). The statute "places the burden 'on the agency to sustain its action,' and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.* ("*CREW I*"), 922 F.3d 480, 487 (D.C. Cir. 2019) (first quoting 5 U.S.C. § 552(a)(4)(B), then quoting *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)). This burden does not shift even when the requester files a cross-motion for summary judgment because the agency ultimately "bears the burden to establish the applicability of a claimed exemption to any records or portions of records it seeks to withhold," *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016), while "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur,'" *Pub. Citizen Health Rsch. Grp. v. U.S. Food & Drug Admin.*, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting *Nat'l Ass'n of Gov't Emps. v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

The agency may sustain "this burden 'by submitting a *Vaughn* index, along with affidavits from agency employees that describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Waterman*, 61 F.4th at 158 (quoting *Am. Immigr. Laws. Ass'n v. Exec. Off. Immigr. Rev.*, 830 F.3d 667, 673 (D.C. Cir. 2016)); *see also Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 150 (D.D.C. 2018) ("An agency may carry its burden of showing an exemption was properly invoked by submitting sufficiently detailed affidavits or

declarations, a *Vaughn* index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the adversary system to operate."). "'Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

### III. DISCUSSION

Plaintiff contests the invocation of FOIA Exemption 6 to redact the names of two NIH employees with the titles "Program Official" and "Grants Management Specialist," respectively. *See* Pl.'s Mem. at 8–9, 10–12. As discussed below, Exemption 6 properly applies to protect from disclosure the names of the individuals who hold those job titles.

#### A. Withheld NIH Employees' Names Qualify for Exemption 6 Nondisclosure

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). As a threshold matter, to qualify for this exemption, the withheld information must be "personnel and medical files" or "similar files." *Id.* "The terms [sic] 'similar files' is construed broadly and 'is intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). "[C]ourts look 'not to the nature of the files,' but rather to 'the nature of the information' at issue." *Skybridge Spectrum Found. v. FCC*, 842 F. Supp. 2d 65, 83 (D.D.C. 2012) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)); *see also Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152–53 (D.C. Cir. 2006) ("similar files" encompasses "not just files, but also bits of personal information, such as names and addresses, the release of which

7

would 'create[] a palpable threat to privacy.'" (alteration in original) (quoting *Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 391 (D.C. Cir. 1987))).

Correctly, nowhere does plaintiff dispute that the two NIH employee names requested qualify as "similar file[s]." *Cf.* Pl.'s Mem. at 10 (stating only that "Exemption 6 exempts from disclosure information from 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.' 5 U.S.C. § 552(b)(6)."). Indeed, the names, job titles, location of tissue procurement sites, and other identifying information of University of Pittsburgh employees, names and identifying information of third parties supporting the grant, and names and identifying information of clients who wrote letters in support of the grant are "bits of personal information," *Jud. Watch*, 449 F.3d at 152, that "appl[y] to . . . particular individual[s]," *Wash. Post Co.*, 690 F.2d at 260. Thus, Exemption 6 may be triggered. *See Jud. Watch*, 449 F.3d at 152–53 (finding that the names and addresses of persons and businesses associated with a drug that induced abortion constituted "similar files").

Upon meeting this threshold determination, the next inquiry is whether disclosure "'would compromise a substantial, as opposed to *de minimis*, privacy interest,' because '[i]f no significant privacy interest is implicated . . . FOIA demands disclosure.'" *Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (alteration and omission in original) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). The standard "means less than it might seem," as a substantial privacy interest is "anything greater than a *de minimis* privacy interest." *Id.* at 1229–30. If a substantial privacy interest is found in the information, courts employ a balancing test to determine whether release of such information constitutes a clearly unwarranted invasion of personal privacy, *Wash. Post*

*Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982); *Rose*, 425 U.S. at 372, by weighing "the privacy interest that would be compromised by disclosure against any public interest in the requested information," *Multi Ag Media LLC*, 515 F.3d at 1228. "[A] privacy interest may be substantial," yet nonetheless "be insufficient to overcome the public interest in disclosure." *Id.* at 1230. "Exemption 6's requirement that disclosure be 'clearly unwarranted' instructs us to 'tilt the balance (of disclosure interests against privacy interests) in favor of disclosure.'" *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (quoting *Wash. Post Co.*, 690 F.2d at 261).

Accordingly, the appropriateness of applying Exemption 6 to withhold the names of the two NIH employees turns on whether the requested information implicates a substantial privacy interest and, if so, whether release of the information would be "clearly unwarranted" in view of the public interest, if any, in the requested documents. This analysis applies to each of the two NIH employees, whose information is being withheld, and is addressed next.

B.   **"NIH Program Official"**

Plaintiff argues that Exemption 6 does not apply to the name of the "NIH Program Official" for two reasons, namely: (1) the name is already publicly available either on the NIH website, *see* Pl.'s Mem. at 8–9, or on the website www.grantome.com, *see* Pl.'s Opp'n at 4–5, and (2) defendant has "completely failed to provide any evidence that fetal tissue researchers at Pittsburgh were ever harassed" and thus made an insufficient showing of risks to the "Program Official," *see id.* at 5–6. Both arguments are addressed in turn.

First, plaintiff claims that NIH already has made the withheld name publicly available, along with the names of other individuals associated with fetal tissue research more generally. As support, plaintiff says the withheld name is listed on NIH's own RePORTER website associated with the relevant grant application as "Anna Burkart Sadusky," who is listed as

9

"Program Officer," *see* Pl.'s Mem. at 8, and also offers up another name "Deborah K. Hoshizaki," listed as the "Program Official" on the publicly available website www.grantome.com to justify lifting the redactions, *see* Pl.'s Opp'n at 4–5. Plaintiff requests *in camera* review for confirmation. *See* Pl.'s Mem. at 8–9. Defendant counters that the name of the "Program Official" has not been publicly released. *See* Fifth Decl. of Gorka Garcia-Malene, FOIA Officer, NIH, HHS ("Fifth NIH Decl.") ¶ 7, ECF No. 44-1; Sixth NIH Decl. ¶ 7; *see also* Def.'s Opp'n at 2–4 (stating that Sadusky is not the redacted name plaintiff requests); Def.'s Reply at 9 ("Plaintiff has no way of confirming the accuracy of the listing on Grantome.com [naming "Deborah K. Hoshizaki" as the "Program Official"] . . . . For that reason, the Government will neither confirm nor deny whether the listed name is correctly attributed to the listed role."). Moreover, defendant contends that any inconsistencies, missteps, or concessions made in the redaction process have already been deemed by this Court not to amount to bad faith, *see id.* at 3–4 (quoting *Ctr. for Med. Progress I*, 2022 WL 4016617, at *17–18), and, in any event, the fact that other individuals associated with fetal tissue procurement and research are publicly identified does not support the release of additional names solely on that basis, *see* Def.'s Reply at 7–11.[2] Defendant is correct.

As previously explained, the fact that the names of some individuals tied to the grant program are public does not justify disclosing more names simply on that basis. *See Ctr. for Med. Progress I*, 2022 WL 4016617, at *14 (describing *Judicial Watch*: "where the D.C. Circuit

---

[2] Despite this prior rejection of plaintiff's urging to make a finding of bad faith, plaintiff persists in seeking such a finding. Again, any inconsistencies throughout the records in the naming of the "Program Official" are not evidence of bad faith. *See Ctr. for Med. Progress I*, 2022 WL 4016617, at *17 (citing *Mobley v. CIA*, 924 F. Supp. 2d 24, 63 (D.D.C. 2013)). Despite the varying uses of "Program Official" and "Program Officer," defendant throughout this litigation has been forthcoming about the need to protect certain information, and has made corrections to the *Vaughn* index as well as subsequent disclosures upon uncovering new information. *See also Ctr. for Med. Progress I*, 2022 WL 4016617, at *17 (describing those same efforts). That conduct supports defendant's good faith efforts to comply with FOIA's requirements.

held that once an agency established the potential for violence and harassment for persons or businesses associated with the product at issue, such 'privacy interest extends to all such employees, and the [agency] need not justify the withholding of [names] on an individual-by-individual basis under FOIA Exemption 6'") (citing *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006)).

Furthermore, any named individuals on the public website www.grantome.com supposedly linked to the grant program do not support disclosure. As the D.C. Circuit outlined in *Cottone v. Reno*, "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." 193 F.3d 550, 554 (D.C. Cir. 1999). Known as the "public domain doctrine," requested information is deemed "officially acknowledged" and thus publicly disclosed if the information is (1) "as specific as the information previously released[,]" (2) "match[es] the information previously disclosed[,]" and (3) "already ha[s] been made public through an official and documented disclosure[.]" *Montgomery v. IRS*, 40 F.4th 702, 710 (D.C. Cir. 2022) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)).

Information cited by plaintiff on www.grantome.com does not fulfill that test because the website is privately managed and operated—claiming to be run by "data scientists based in Cleveland, OH USA who are scientifically trained with Ph.D. degrees in quantitative disciplines"—and claiming to compile grant data available from NIH. *See About*, Grantome (last visited July 24, 2023), https://www.grantome.com/about [https://perma.cc/6E3Z-F2HN]. Nowhere on the website does the company purport to be an arm of the government, and plaintiff does not allege such. *See* Pl.'s Opp'n at 4–5; *see also* Sixth NIH Decl. ¶ 7 ("The grantome.com website is not, in any way, associated with NIH and NIH bears no responsibility for (nor does it

11

have any control over) what appears there."). On that ground alone, plaintiff fails to show that the public domain doctrine applies and thus discussion of the two additional requirements for official disclosure is unnecessary.

Second, plaintiff claims a complete lack of factual support for defendant's contention that NIH employees affiliated with this grant project are subject to risks of harassment, bolstering this contention by pointing out that NIH already publicizes the names of individuals connected to the grant. *See id.* at 5–6. This Court already held that defendant provided sufficient evidence to support that releasing the names of individuals tied to the grant program and fetal tissue research, such as the "Program Official," would subject those individuals to the real risk of threats, harassment, and violence. *See Ctr. for Med. Progress I*, 2022 WL 4016617, at *13 (citing First Decl. of Gorka Garcia-Malene, FOIA Officer, NIH, HHS ("First NIH Decl.") ¶ 31, ECF No. 17-3; Second Decl. of Gorka Garcia-Malene, FOIA Officer, NIH, HHS ("Second NIH Decl.") ¶ 12, ECF No. 21-1; Revised *Vaughn* Index at 59–60, ECF No. 25-1). Such interests are far more than *de minimis*. Plaintiff again challenged the sufficiency of defendant's evidence of harassment in its Motion to Alter or Amend Judgment, which was similarly rejected, *see Ctr. for Med. Progress II*, 2022 WL 17976633, at *2. Plaintiff now seizes a third opportunity to decry a supposed dearth of evidence of harassment—such an effort to force the Court to revisit its prior findings based on arguments already rejected twice is both unsuccessful and unacceptable.

Given the lack of official public disclosure of the name of the "Program Official" and the great privacy interest in protecting that individual's identity, FOIA Exemption 6 is properly invoked here and thus defendant's motion for summary judgment is granted as to the withholding of that name.

C.      **"NIH Grants Management Specialist"**

Plaintiff then challenges defendant's invocation of Exemption 6 to withhold the identity of the "NIH Grants Management Specialist" arguing that the public interest in ensuring that NIH and the grant recipient are complying with federal and state laws pertaining to fetal tissue outweigh that individual's privacy interest. *See* Pl.'s Mem. at 10–11.  According to plaintiff, the "NIH Grants Management Specialist" is "in a very important position" with the tasks, among other things, of "evaluating grant applications for administrative content and compliance with statutes, regulations, and guidelines," such that knowing the identity of this person would address the public concern with statutory compliance.  *See id.* at 11; Pl.'s Opp'n at 6–9.  Defendant counters that the "NIH Grants Management Specialist" is "a staff-level civil servant" without programmatic responsibilities and "is not involved in the substance of the grant."  Def.'s Opp'n at 10 (citing Fifth NIH Decl. ¶¶ 5–6).  Defendant also flags plaintiff's lack of evidence, beyond hearsay reported in news articles, that NIH or the grant recipient are violating any statute in any way, and that such conclusory allegations do not outweigh the individual's substantial interest in privacy to avoid the risk of harassment or threats.  *See id.* at 10–13.  Finally, defendant asserts that any interest of the public in exposing "what their government is up to" would not be solved by the release of the name of a single individual and thus does not eclipse the privacy interest. *Id.* at 11 (quoting *Rose*, 425 U.S. at 361).  Again, defendant is correct.

Plaintiff is free to request information regarding potential government wrongdoing, but revealing the exact identity of the "NIH Grants Management Specialist" in no way furthers that aim.  *See Rose*, 425 U.S. at 372 ("[T]he basic purpose of the Freedom of Information Act [is] to open agency action to the light of public scrutiny." (internal citation omitted)).  Aside from stating that the "NIH Grant Management Specialist" has an important job, *see* Pl.'s Mem. at 11; Pl.'s Opp'n at 6–7, plaintiff's papers stop short of accusing this person of any individual

13

misconduct.  Thus, in attempting to unravel a supposed web of government noncompliance, the relevant material involves the *actions* of individuals, not their names.  *Cf. Rose*, 425 U.S. at 380–81 (ruling that the names of U.S. Air Force Academy cadets accused of wrongdoing were irrelevant to the inquiry into whether the Air Force abided by its Honor Code and thus the names were not subject to disclosure under FOIA Exemption 6); *U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 774–75 (1989) ("[A]lthough there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency, the FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny[.]").  The extremely limited public interest in the identity of the "NIH Grant Management Specialist" is far outweighed by the private interest in protecting this individual from harassment and potential violence that could result from disclosing their name.  As previously discussed, plaintiff provided sufficient facts to illustrate that threat.  *See supra* Section III.B (citing First NIH Decl. ¶ 31; Second NIH Decl. ¶ 12; Revised *Vaughn* Index at 59–60).  Moreover, plaintiff's second attempt to assert that prior NIH disclosure of names of individuals connected to fetal tissue research justifies disclosure of more names that have thus far been protected similarly falls flat.  *See supra id.* (citing *See Ctr. for Med. Progress I*, 2022 WL 4016617, at *14; *Jud. Watch, Inc.*, 449 F.3d at 153).

As such, the private interest in protecting the identity of the "NIH Grants Management Specialist" outweighs the public interest and thus FOIA Exemption 6 properly withholds that information from disclosure.  Defendant's motion for summary judgment is granted.

## IV. CONCLUSION

For the foregoing reasons the government's invocation of FOIA Exemption 6 to withhold the identities of the "NIH Program Official" and the "NIH Grants Management Specialist" is proper. Plaintiff's motion for summary judgment demanding release of that information is therefore denied and defendant's cross-motion for summary judgment is granted.

An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: August 7, 2023

                                                                                   _____
                                                                                   **BERYL A. HOWELL**
                                                                                   United States District Judge